MARY JELSER ET AL. v. W. H. WHITE ET AL.

(Filed 8 March, 1922.)

**1. Evidence—Declarations—Title.**

Declarations of pedigree for the purpose of showing title to lands will be excluded as evidence unless it can fairly be assumed that the declarant is disinterested.

**2. Same—Ante Litem Motam.**

In order to introduce declarations as evidence of title to lands, it must affirmatively appear that the statements were made *ante litem motam*, or before the beginning of the controversy, and not alone at the time of bringing the suit, thus differing from an admission, which is the waiver of proof of a fact by a party to the action, as it may affect his cause.

**3. Same—Obtained for Purposes of Suit.**

Where declarations have been obtained for the purpose of establishing the title to the lands in controversy in behalf of a party claiming as heir at law of the deceased owner, and to be used in a contemplated action, they are inadmissible on the trial, whether made against the interest of the declarant or *ante litem motam*, or otherwise.

APPEAL by defendants from *Lyon, J.*, at the December Term, 1921, of CARTERET.

Proceeding for partition. The jury found that the plaintiffs and the defendants are tenants in common. Judgment for plaintiffs. Defendants appealed.

*C. L. Abernethy and Guion & Guion for plaintiffs.*
*M. Leslie Davis, C. R. Wheatley, and J. F. Duncan for defendants.*

ADAMS, J. The petitioners allege that they are the owners of a one-half undivided interest in the land in controversy as tenants in common with the defendants. The defendants deny this allegation, and plead sole seizin. At the trial the plaintiffs offered in evidence the will of Samuel Smith, in which the land described in the petition is devised to Thomas Huff and Henry Huff. It is admitted that the defendants

have acquired the interest of Thomas, and the controversy turned primarily on the question whether the plaintiffs are the heirs of Henry. In addition to other evidence tending to show their descent from the latter, the plaintiffs introduced in evidence a written instrument purporting to be the affidavit of Haywood Huff. By exception duly entered the defendants challenge the competency of this evidence.

Helen Huff, one of the plaintiffs, had previously testified that she was lineally descended from Henry Huff. The affidavit represents Haywood Huff as declaring that his grandfather was Thomas Huff, one of the devisees of Samuel Smith; that Thomas and Henry, the other devisees, were brothers; and that Helen was descended from Henry. This evidence, then, presumably was of special weight in establishing the title of the plaintiffs. But we are of opinion that it was not competent for this purpose. In view of the circumstances under which the affidavit was obtained our conclusion is not affected, whether we consider the statement as a declaration concerning genealogy or pedigree, and therefore an exception to the rule which excludes hearsay evidence, or as a declaration against the interest of the declarant.

The evidence for the plaintiff tends to show that Haywood Huff, then 85 years old, was at the home for the aged and infirm in Carteret County; that a justice of the peace residing in Craven, at the instance of Helen Huff, one of the plaintiffs, twice visited the declarant for the purpose of obtaining a history of the Huff family to be used in this suit in behalf of the plaintiffs; and that a typewritten copy (submitted to the declarant) and not the original affidavit was produced at the trial and admitted in evidence. It appears, therefore, that the affidavit was procured after this controversy arose, to be used in the instant suit. One of the witnesses for the plaintiff said, "I was trying to perpetuate the family record of Helen Huff preparatory to bringing this suit, for that reason and no other reason." The affidavit was made 26 April, 1919, and this action was begun about three weeks afterward.

Elementary principles in the law of evidence exclude declarations as to pedigree unless it can fairly be assumed that the declarant is disinterested. Hence, it must affirmatively appear that the statement was made *ante litem motam;* and this expression is not restricted to the time of bringing suit, but is referred to the beginning of the controversy. *Rollins v. Wicker,* 154 N. C., 562; *Fleming v. Sexton,* 172 N. C., 256.

Nor, as we have suggested, is the affidavit competent as a declaration against the interest of Haywood Huff. Declarations against interest are entirely distinct from admissions; the latter amount to a waiver of proof and the former to evidence of the fact declared. It is not necessary to decide whether the character of the affidavit, as a declaration

against interest, dispenses with the necessity of showing that it was made *ante litem motam* (22 C. J., 235), because as such declaration it is incompetent on another ground. The evidence clearly shows that the parties contemplated the subsequent use of the affidavit in prospective litigation as Haywood Huff's statement in behalf of designated parties. Declarations against interest must be spontaneous. They must be made prior to the time when their subsequent use as evidence may have been in contemplation. "If it appear that at the time of the making of the declaration the situation was such that its use in evidence might have been in the mind of the party, the declaration is inadmissible. . . : The rule—a presumption, as it is called in the cases—is an absolute rule of law, and the evidence, whether a declaration against interest or evidence of another sort, is ineffective in opposition to the rule." McKelvey on Ev., 317.

We therefore hold that the defendants are entitled to a new trial for error committed in the admission of the statement against their objection.

New trial.