Action for damages for personal injury. At the time of his injury the plaintiff was a minor and an employee of the defendant. He was engaged in the work of tailing a planer, i. e., "taking away the timbers after they went through the machine." The planer was run by a belt and pulley. The pulley was very near the floor and was not incased. There is evidence that the floor was greasy and uneven. The plaintiff's narrative of the injury is as follows: "When we got the truck rolled up to the machine I started around to my place where I was to be, and just as I made the turn to go around the floor I stepped on a block and my foot came out from under me and the pulley caught me by the foot and slung me 10 or 12 feet." It became necessary to amputate his right foot. Other relevant facts are set out in the opinion.
Issues as to the defendant's negligence, the plaintiff's contributory negligence, the statute of limitations, the bar of a judgment in a former action, and damages were answered in favor of the plaintiff. Judgment for the plaintiff and appeal by the defendant.
The first five exceptions are without substantial merit. The testimony to which they relate was admissible as tending to show that the plaintiff's injury affected his ability to perform physical labor and to earn money.Wallace v. R. R., 104 N.C. 442; Hansley v. R. R., 115 N.C. 611; Rushingv. R. R., 149 N.C. 161; Hargis v. Power Co., 175 N.C. 31. The exceptions are not within the principle stated in Shepherd v. Lumber Co.,166 N.C. 130. *Page 415 
The second assignment of error questions the competency of evidence and the propriety of remarks made by one of the plaintiff's attorneys in his address to the jury. The plaintiff was under cross-examination. He testified that after he was hurt he worked for the defendant. The defendant's counsel then asked, "Why did you quit?" The plaintiff answered, "They ran me off; said the insurance wouldn't allow them to work me." The defendant's motion to strike out the answer was denied. Exception 7.
On his direct examination Joe Whisnant, stepfather of the plaintiff, testified after objection by the defendant, that Mr. Beard, superintendent of the factory, told him that the insurance company would not allow the defendant to keep the plaintiff in its service. Exception 10.
In the concluding argument one of the counsel for the plaintiff used substantially this language: "The plaintiff told (the defendant's attorney) that the insurance company would not let him work. What has the insurance company got to do with the case? Since when has it happened that the insurance company can say who can and who cannot work for the Caldwell Furniture Company? I cannot see what they have to do with it." The defendant's counsel privately requested the judge to tell the jury in his charge "not to consider the insurance company." The request was overlooked. Counsel for the defendant was present when the charge was given and did not except, but entered an exception at the time of settling the case on appeal. Exception 27-A.
The defendant argued that the evidence excepted to was an indirect method of informing the jury that the defendant had insurance which, in case of the plaintiff's recovery, would indemnify it against loss. This Court has been insistent in its disapproval of any attempt by the plaintiff, in an action for personal injury or death, to prove that the defendant had insurance protecting it from the consequences of its own negligence. In Lytton v. Manufacturing Company, 157 N.C. 331, evidence that the defendant in an action for damages arising from personal injury was insured in a casualty company was held to be incompetent because it was entirely foreign to the issues raised by the pleadings — a position maintained in several subsequent decisions. Featherstone v. Cotton Mills,159 N.C. 429; Starr v. Oil Company, 165 N.C. 587; Luttrell v. Hardin,193 N.C. 265. In these cases the evidence was offered by the plaintiff. The annotation in 56 A.L.R., 1418, contains an exhaustive review of the cases on this subject. On page 1432 it is said: "The general rules and principles applicable to the question of the admissibility of evidence, in a negligence action, of the fact that the defendant therein carries liability or indemnity insurance protecting him from the consequences of negligence, are settled beyond dispute, but like most other rules of evidence, they are subject to qualifications and *Page 416 
exceptions." The principle relating to the qualification of the rule is stated by Hoke, J., in Bryant v. Furniture Co., 186 N.C. 441, as follows: "It has been held in this State that in a trial of this kind the fact that a defendant company charged with negligent injury held a policy of indemnity insurance against such a liability is ordinarily not competent, and when received as an independent circumstance relevant to the issues, it may be held for prejudicial error. And if brought out in the hearing of the jury by general questions asked in bad faith and for the purpose of evasion, it may likewise be held for error. On the contrary, if an attorney has reason to believe that a juror, tendered or on the panel, has pecuniary or business connection naturally enlisting his interest in behalf of such a company, it is both the right and duty of the attorney in the protection of his client's rights to bring out the facts as the basis for a proper challenge, or if in the course of the trial it reasonably appears that a witness has such an interest that it would legally affect the value of his testimony, this may be properly developed, and where such a fact is brought out merely as an incident, on cross-examination or otherwise, it will not always or necessarily constitute reversible error when it appears from a full consideration of the pertinent facts that no prejudicial effect has been wrought."
The application of the modification is given in Davis v. ShipbuildingCo., 180 N.C. 74, in which it was held, upon the defendant's denial of the plaintiff's employment, that the fact that the defendant held indemnity insurance for injury to its employees was competent as tending to show that the plaintiff was in its service.
In the case at bar the evidence excepted to (Exception 7) was evoked by the defendant. If a witness gives an answer which is not responsive to a question, the proper course is a motion to strike out the answer or to instruct the jury to disregard it. Hodges v. Wilson, 165 N.C. 323;Godfrey v. Power Co., 190 N.C. 24, 31. This motion was made. But the plaintiff's answer was a direct response to the defendant's question, "Why did you quit?" If the answer had been confined to the words, "They ran me off," the plaintiff's testimony would have been subject to gave impeachment. It would have worked serious if not irreparable injustice to him to exclude the reason given by the defendant for turning him off. He was entitled to an opportunity to counteract the damaging effect of the question which was manifestly intended to weaken his testimony, by reciting in its entirety the reason given by the defendant.
On the same principle the tenth exception must be overruled. It was said in S. v. Bethea, 186 N.C. 22, that when the credibility of a witness is impugned by cross-examination tending to impeach his veracity or his relation to the cause, it is permissible to corroborate his credibility and *Page 417 
to restore confidence in his veracity. Such corroborating evidence may include previous statements whether made pending the controversy or antelitem motam. Dellinger v. Building Co., 187 N.C. 845. The object of the cross-examination was to impair or discredit the plaintiff's version of the injury; and in corroboration of what he had said it was legitimate to prove by Joe Whisnant that the defendant's superintendent told him the plaintiff had been discharged for the identical reason the defendant had given the plaintiff. The superintendent's statement may not have been competent as substantive evidence against the defendant, but it was competent in corroboration; if competent for any purpose there was no error in refusing to exclude it.
Exception 27-A is likewise untenable. The defendant's counsel expressly declined to interrupt the concluding argument to the jury and relied upon his private understanding with the judge. He heard the charge, and not only failed to call attention to the court's inadvertence, but entered no exception until the case on appeal was settled. The exception should have been taken before the verdict was returned. S. v. Tyson, 133 N.C. 692; S.v. Davenport, 156 N.C. 596, 612.
Assignments 5 and 12 include exceptions 11, 12, 13, 18, 19, 20, 28, and rest upon the assumption that Joe Whisnant and John Whisnant were permitted to say whether certain appliances were approved and in general use without qualifying as experts. The testimony of these witnesses did not involve a question of science or a conclusion to be drawn from a hypothetical statement of facts; it was elicited as a matter within their personal knowledge, experience, and observation. The exception to the general rule that witnesses cannot express an opinion is not confined to the evidence of experts testifying on subjects requiring special knowledge, skill or learning; it includes the evidence of common observers testifying to the results of their observation. Britt v. R. R., 148 N.C. 37; Marshall v.Telephone Co., 181 N.C. 292.
Exceptions 14, 15, 16, 17. The age of the plaintiff being in controversy the court admitted in evidence the declarations of the plaintiff's father on this point. He told John Whisnant in 1908 that the plaintiff was born 31 January, 1906. The plaintiff testified that this was the date of his birth; that his father disappeared when he was a boy, and that several years thereafter his mother married the second time. There is a presumption that the plaintiff's father is dead and his declaration, made ante litem motam, was competent on the fact in issue. Clements v. Hunt, 46 N.C. 400; Norrisv. Edwards, 90 N.C. 383; Ewell v. Ewell, 163 N.C. 234; Jelser v. White,183 N.C. 126; Beard v. Sovereign Lodge, 184 N.C. 154.
Assignments 13, 14, 15, 16, 17, 18 are based upon the contention that the presiding judge inadvertently disregarded the provisions of C. S., *Page 418 
564, and influenced the verdict by impressing the minds of the jurors with the idea that the defendant was knowingly guilty of a crime when it employed the plaintiff; that the plaintiff was immune from the charge of contributory negligence; and that in reality the quantum of damages was the only issue to be determined. The legal principles contained in the instructions are not impeached; but it is insisted that the jury must have understood the instructions as the intimation, if not the expression, of an opinion which was hostile to the defendant.
The court has endeavored to maintain the integrity of section 564 by the strict observance of its provisions, holding that the statute is mandatory and that any expression of opinion by the trial judge during the trial may be excepted to after the verdict is returned. S. v. Ownby, 146 N.C. 677;S. v. Rogers, 173 N.C. 755; Greene v. Newsome, 184 N.C. 77; S. v.Bryant, 189 N.C. 112; S. v. Sullivan, 193 N.C. 754.
Our interpretation of the charge does not justify the appellant's conclusion. We have discovered nothing in the instructions which should bias a mind of ordinary firmness and intelligence or in anywise detract from the quality described by counsel for the appellant as "the fine sense of right characterizing the trial judge."
In November, 1919, a consent judgment was signed in an action pending in the Superior Court of Caldwell County entitled "Yancey Saunders (the present plaintiff) by his next friend, Mary Whisnant, v. Caldwell Furniture Company." The complaint was filed on behalf of the plaintiff for his injury and on behalf of his mother for the loss of his services. The judgment was not based upon an actual investigation of the facts. No answer was filed, no evidence was introduced, no issues were submitted to the jury. The judgment was signed by the judge who tried the case now under consideration. In the present case he held that as to the plaintiff, who was then a minor, the consent judgment was void. The defendant paid the judgment by a check given to "Mary Whisnant, next friend of Yancey Keller." The plaintiff testified that he had never received any part of the check.
The question raised by the exception has been determined adversely to the defendant's contention. In Ferrell v. Broadway, 126 N.C. 258, the Court said: "But it may be taken to be the law that, in a case where issues are joined between infants on one side and the adverse party and no evidence is introduced, and nothing is done or said on the trial except that an agreement is entered into by the next friend or counsel of the infants, that the verdict shall be rendered against the infant, the verdict and judgment will not bind the infants. In such a case, the court would have no knowledge of the facts, and therefore could not exercise any supervision over the interest of the infants. The object in having a next friend appointed for infants is to have their rights and *Page 419 
interests claimed and protected, and the next friend or their counsel will not be permitted to yield their rights to others by a consent verdict and judgment where the court has exercised no supervision over the arrangement." The case was reheard (127 N.C. 404) on a different ground, but as pointed out in Rector v. Logging Co., 179 N.C. 59, the principle set out in the quotation above was in no wise modified or questioned. On the contrary it was approved in the case last cited, the Court, in an opinion delivered by Hoke, J., saying in effect that the principle was against the validity of the compromise judgment, but deferring final decree because in his replication the plaintiff had raised an issue of fraud. The Court has also approved the principle that the compromise can be impeached upon the trial of the action in which it is presented as a defense. Bunchv. Lumber Co., 174 N.C. 8.
The remaining exceptions, including the motion for nonsuit, call for no discussion. We find
No error.