Mary Elizabeth Peace, mother of plaintiff, was the owner of certain land in High Point Township for many years prior to 13 November, 1929. She lived at her home place and on said date it was alleged that "she was removed from her home place by her son, the defendant, John Peace," and lived in his home until her death, intestate, on 27 December, 1931. She left surviving the following children and only heirs at law: J.A. Peace, C.L. Peace, Alma Peace Burton and John Peace. She had no other property except the real estate in controversy. At the time of her death the deceased was 79 years of age. On 26 November, 1930, Mary Elizabeth Peace signed a paper-writing purporting to be a deed for said land, in which Minnie Peace, the wife of the defendant, J. A. Peace, was named grantee.
The plaintiff instituted this action to recover a one-fourth undivided interest in the land and to set aside the deed. She offered evidence that her mother had been totally blind for ten years, previous to her death, and that she was weak, nervous, and not capable of taking care of herself. "She didn't know what she was doing. After she went to John's she could go around in the room but not out."
The deed was recorded on 31 December, 1931, after the death of the grantor. The plaintiff offered the deed for the purpose of attack. There was evidence offered by the defendant tending to show that the deceased, although blind and old, was intelligent and of sound mind and memory until shortly before her death.
The only evidence with respect to the execution and delivery of the deed is contained in the testimony of J. M. Davis, a notary public, who took the acknowledgment of Mary Elizabeth Peace. He said: "I wrote her name there. She made this mark. She told me to write her name. . . . I was in the home ten or fifteen minutes. I didn't altogether read that deed to her. I asked her if she understood what it was. I went into the room where she was lying on the bed, apparently blind. I told her my business. I told her that I had come there to get her signature to a deed to a house and lot. She said she couldn't see how to write and I took it to her in bed and held it up to her and she touched the pen and she made her mark. I had not known her prior to this time. *Page 101 
John Peace came by and got me and took me over there. She said she knew me. . . . I went with John and came back with John Peace. I took the deed to her to her bed on a book or something, and held it up to her and she touched the pen. I wrote the name. I do not recollect there was anybody else in the room, but Mr. and Mrs. Peace were in the house. There were two rooms. The door was open. We went first into this room. She was lying in there on the bed and I went in there to the bed to her. I do not recollect that he (Mr. Peace) went out. The rooms, if I recollect right, could open together."
The trial judge inquired of attorneys for the defendant if they had any more evidence about the execution of the deed, and upon receiving a negative reply, stated to counsel that he would charge the jury that the deed had never been executed and delivered, and that the plaintiff was entitled to recover her one-fourth interest in the land. Thereupon the judge charged the jury to answer the issue as to the ownership of one-fourth of the property "Yes."
From judgment upon the verdict the defendant appealed.
Was there any evidence of the execution and delivery of the deed?
The delivery of a deed is essential to its validity and is said to be "its tradition from the maker to the person to whom it is made or to some person for his use." That is to say, the maker of the deed must part with the possession and control of the instrument with the intention of giving effect to it. Kirk v. Turner, 16 N.C. 14; Robbins v. Roscoe, 120 N.C. 79,26 S.E. 807; Mordecai Law Lectures, Vol. II, page 28, et seq.
This Court has consistently held that registration of a deed is prima facie evidence of delivery, but that such is not conclusive between the parties and that an injured party may attack the execution and delivery of the deed and show, if possible, that in fact there was no delivery. In the case at bar the deed was offered by the plaintiff for the purpose of attack, and hence the presumption arising from registration thereof, does not arise. See Fortune v. Hunt, 149 N.C. 358, 63 S.E. 82; Linker v.Linker, 167 N.C. 651, 83 S.E. 736.
There was no evidence of a delivery of the deed during the lifetime of the grantor, and as there is no presumption arising from registration upon the facts disclosed by the record, the trial judge ruled correctly, and the judgment rendered is
Affirmed. *Page 102